# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 11-20736-TLM** |
| **JOHN WALTER HYATT and** | ) | |
| **SHIRLEY MICHELLE HYATT,** | ) | **Chapter 7** |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

Before the Court in this chapter 7 case of John and Shirley Hyatt

("Debtors"), Case No. 11-020736-TLM,[1] is a motion to dismiss filed by the

chapter 7 trustee, J. Ford Elsaesser ("Bankruptcy Trustee"),[2] and a motion for

relief from the § 362(a) automatic stay of creditor "The Hyatt Revocable Living

Trust" (hereinafter the "Trust").[3]

_____

[1]  Citations in this Decision to pleadings, papers or matters of record in this chapter 7 case will be to "Doc. No. __."

[2]  Because the underlying disputes concern a trust and the actions of Debtor John Hyatt and/or his brother, Gene Hyatt, as "trustee" of that trust, the Court will refer to the chapter 7 trustee in the indicated manner to avoid confusion.  Additionally, it can be noted that Debtors have in certain of their papers referred to the United States Trustee in a fashion suggesting they confuse this office with the Bankruptcy Trustee.  The U.S. Trustee has not participated in this case or the related adversary proceedings.

[3]  Unless otherwise indicated, all statutory references in this Decision are to the provisions of the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532.

MEMORANDUM OF DECISION - 1

**BACKGROUND**

  **A.  Procedural Posture**

  Debtors, appearing *pro se*, filed a chapter 7 petition on June 8, 2011,

commencing this case.  Doc. No. 1.  Schedules and statements were filed by the

Debtors on June 21, 2011, and amended on July 8, 2011.  Doc. Nos. 16, 26.

Debtors assert therein their ownership of a 22-acre parcel on which their home

sits, located at 11341 Church Road in Rathdrum, Idaho, which they claim is worth

$300,000, along with three two-acre parcels each worth $1,000 (collectively, the

"Property").  The three two-acre parcels are adjacent to the residence parcel.  *Id.*

It appears from other materials in the record that all were once part of a single

parcel.

  **1.  Motion for Relief from the Automatic Stay**

  The Trust, on July 6, 2011, brought a motion for relief from the automatic

stay of § 362(a).  Doc. No. 24 ("Stay Motion").  The Trust acts through, and the

Stay Motion is signed by, Gene Hyatt as the "successor trustee" of the Trust.

Gene Hyatt is the brother of Debtor John Hyatt.[4]  The Stay Motion seeks

termination of the § 362(a) stay so that the Trust can continue with enforcement,

through a sheriff's sale, of a judgment lien it holds in and against the Property.

---

  [4]  Generally in this Decision Gene Hyatt is referred to as "Hyatt" and John Hyatt is
referred to as "Debtor" (or with his wife, Shirley Michelle, as "Debtors").  At times, however, the
Court will for clarity refer to John, Gene, and other Hyatt family members by their first names.

MEMORANDUM OF DECISION - 2

The Stay Motion asserts that a judgment against Debtors was obtained by the

Trust on April 29, 2010, in the Superior Court of the State of California, Los

Angeles County, and was thereafter domesticated in Idaho and recorded in the real

property records of Kootenai County, thus creating a judgment lien under Idaho

Code § 10-1110.  The Trust asserts that the lien is currently in the total amount of

approximately $584,000.[5]  Debtors oppose the Stay Motion; the Bankruptcy

Trustee, however, does not.  *See* Doc. No. 54.[6]

## 2.    The Dischargeability Adversary Proceeding

About a week after filing the Stay Motion, the Trust filed a complaint

commencing an adversary proceeding against Debtors, Adv. No. 11-07023-TLM.[7]

In that action, the Trust asserts that its April 29, 2010, California state court

judgment against Debtors should be found nondischargeable under § 523(a)(2)(A),

---

[5]  The Trust notes that an Idaho state court has awarded it attorneys' fees against Debtors as a sanction, and requested a submission by the Trust's counsel as to the amount claimed, but that the automatic stay has prevented such a submission and the adjudication of the precise amount of that award.  The Trust indicates that it intends to assert approximately $50,000 in fees, and that it would include this as an amount also secured by the judgment lien, should the stay be lifted to allow completion of that aspect of the litigation.

[6]  The Bankruptcy Trustee's "response" to the Stay Motion simply indicates a lack of objection, without further comment.  Presumably, the Bankruptcy Trustee's position is based on his determination that there is no equity in the subject Property, *see* § 362(d)(2)(A), and that there is no necessity of the property for an effective reorganization under § 362(d)(2)(B) in that the instant case is a chapter 7 liquidation.  This would be consistent with the position the Bankruptcy Trustee has taken in similar situations.

[7]  Citations in this Decision to pleadings, papers or matters of record in this related adversary proceeding will be to "Adv. Doc. No. __."

MEMORANDUM OF DECISION - 3

(a)(2)(B), and/or (a)(4).  Adv. Doc. No. 1.[8]  Following a September 2011 answer by Debtors, the Trust moved for summary judgment, Adv. Doc. No. 10, which Debtors oppose.

### 3.   Bankruptcy Trustee's Motion to Dismiss

On August 29, 2011, the Bankruptcy Trustee filed a motion to dismiss this chapter 7 case.  Doc. No. 39 ("Dismissal Motion").  The cause for dismissal, according to the Bankruptcy Trustee, is the Debtors' failure to file and turn over copies of their tax returns for the years 2007 to 2010.  This, the Bankruptcy Trustee asserts, violates among other things the obligations imposed on Debtors under § 521(e)(2)(A)(i), and thus triggers a requirement of dismissal under § 521(e)(1)(B).[9]  Debtors oppose the Dismissal Motion.

Because of the close relationship of all matters presented, the Court conducted a consolidated hearing on November 1.  The summary judgment motion in the related adversary proceeding was argued, and taken under

---

[8] The judgment arises from an order entered in *In re The Hyatt Revocable Living Trust*, Case No. VP012044, California Superior Court, Los Angeles County.  The Trust also filed, on September 12, 2011, a second complaint, commencing Adv. No. 11-07028-TLM, seeking to determine that another judgment of $220,000, entered in July 2011 by the same court but in the related case of *In re the Matter of Dorothy Hyatt*, Case No. VP012079, should be found nondischargeable under § 523(a)(2) and (4).  No matters in this second adversary proceeding are presently at issue.

[9] The Bankruptcy Trustee also filed an adversary proceeding against Debtors, Adv. No. 11-07027-TLM, seeking denial of Debtors' discharge under § 727(a)(6)(A) for failure to obey the Income Tax Turnover Order issued by the Court, Doc. No. 7.

MEMORANDUM OF DECISION - 4

advisement.[10]  That motion will be addressed by a separate Memorandum of

Decision in the adversary proceeding.  In this chapter 7 case, arguments were

entertained on the Stay Motion as a preliminary hearing.  *See* § 362(e); LBR

4001.2(e)(2).  In connection with the Dismissal Motion, the Bankruptcy Trustee

called Debtor John Hyatt, who was sworn and testified, and introduced into

evidence Exhibits 200-203.  Debtors marked and attempted to introduce rebuttal

exhibits, but the Bankruptcy Trustee's objection thereto was sustained.  At the

conclusion of the hearing, the Court took the Dismissal and Stay Motions under

advisement.

**FACTS**

### A.    The Record

Debtors have filed hundreds of pages of papers and materials in their

chapter 7 case and the related adversary proceeding, which this Court has now had

an opportunity to review.  Additionally, the Trust has provided lengthy

submissions in connection with the Stay Motion and in an affidavit supporting the

summary judgment motion.  Several of the documents and papers, particularly

those of Debtors, were filed somewhat randomly in either the main chapter 7 case

or in the adversary proceeding, but with the evident intent that they be considered

---

[10] The scheduled pretrial conferences in that adversary proceeding, No. 11-07023-TLM, and those in Adv. Nos. 11-07027-TLM and 11-07028-TLM, were all vacated by the Court *sua sponte*, pending resolution of the Dismissal, Stay, and summary judgment motions.

in regard to all pending matters.  Inasmuch as the Court conducted a consolidated

hearing, has heard and considered Debtors' and the Trust's arguments in

connection with both the Stay Motion and the summary judgment motion, and has

had the opportunity to review and evaluate all submissions, it will consider the

same to the extent relevant to either of the pending motions in this chapter 7 case.

Finally, in addition to the foregoing record, the Court has reviewed its own

files and records as they relate to the matters before it.[11]

### B.   The California Litigation

The genesis of the disputes between the parties can be summarized

generally though, given the extended litigation among the parties, not briefly.[12]

Debtor John Hyatt and his brother Gene are two of four children of George

C. Hyatt ("George") and Dorothy Roman Hyatt ("Dorothy").  George and Dorothy

were the original settlors of the Trust, executing the first Trust documentation in

---

[11]   The Court takes judicial notice of its files and records pursuant to Fed. R. Evid. 201.
And, as this Court is a unit of the District Court for the District of Idaho, *see* 28 U.S.C. § 151, it
deems it proper to take judicial notice of another, related case before the Idaho District Court,
*John Walter Hyatt v. Baron & Behrndt, LLP, et al*, Case No. 2:09-cv-372-EJL-LMB, which is
discussed later in this Decision.

[12]   Much of this background is taken from the various papers filed by Debtors, which
outline the course of events and the nature of the contentions Debtors have leveled against Gene
and others.  *See*, *e.g.*, Doc. Nos. 34, 35.  The Court has also relied on the rulings of various other
courts and their judicial officers including the California state court, the Idaho state court in
Kootenai County, and the Magistrate Judge and District Judge of the District Court for the
District of Idaho, all of whom have been called upon to undertake the same sort of review.

MEMORANDUM OF DECISION - 6

November 1990.[13]  George died in 1991.  Dorothy amended the Trust documents

on December 12, 2007.[14]  Gene then filed an action in the California state courts in

February 2008 seeking a conservatorship for Dorothy, and a temporary

conservator was appointed on February 6, 2008.[15]  Debtor asserts that he alerted

his mother to the existence of this conservatorship.  On February 22, 2008, another

amendment to the Trust documentation was executed by Dorothy, removing Gene

and others as trust beneficiaries.  The California state court later determined this

latter amendment to be invalid since, under state law, a conservatee lacks the legal

capacity to enter into transactions that bind the trust estate after a conservator is

appointed.[16]

A hearing was set in the state court for April 2008.[17]  John alleges that Gene

---

[13]  One of Debtors' motions in the related adversary case, Adv. No. 11-07023-TLM, asserts that John Hyatt was named as the successor trustee of the Trust in 1990, as well as executor for George and Dorothy's wills.  Adv. Doc. No. 18 at 3, 11.

[14]  Debtors have attacked this amendment as fraudulent and part of an orchestrated effort by Gene to control Dorothy and her financial affairs.

[15]  This conservatorship, Case No. VP011852, is the third related California action in Los Angeles County; it was the first of the three to be filed.

[16]  *See* "Decision After Hearing" dated February 26, 2010, in *In re The Hyatt Revocable Living Trust*, Case No. VP012044, Los Angeles Superior Court, Commissioner Robert S. Wada presiding (hereafter the "February 2010 Decision").  Adv. Doc. No. 10-4, Ex. A.  This decision followed a December 10, 2009, court trial.  The February 2010 Decision was confirmed and implemented through a later "Order on Probate Code § 850 Petition for Return of Trust Property and Damages Filed by Gene Hyatt" entered by Commissioner Wada on April 29, 2010 (hereafter the "April 2010 Order").  Adv. Doc. No. 10-5, Ex. B.

[17]  This hearing was in the conservatorship action before Judge Cowell of the California
(continued...)

MEMORANDUM OF DECISION - 7

"kidnaped" Dorothy to keep her from talking with Debtors as that hearing date approached, and he further contends that Debtors were "induced by fraud" to appear at such hearing.  However, Debtors nevertheless participated, obtaining and filing with the court a number of affidavits from Dorothy as well as other materials.[18]

Dorothy died on August 8, 2008.  Several days later, a probate matter was commenced.[19]  Debtors allege that Gene filed a false "pour-over" will of Dorothy in an effort to control the probate and to supercede or defeat administration of the Trust under the February 2008 amendments.

In October 2009, Dorothy's real property located at 6560 Ianita, Lakewood, California (the "Ianita Property") was sold by the Trust for $365,000.[20]  Prior to its

---

[17] (...continued)
Superior Court, Case No. VP011852.

[18]   Debtors attempt to make much of the fact that a Probate Investigator's Petition Report from April 2008 refuted Gene's contentions and supported the conclusions that Dorothy did not need a conservator; that, if there was to be a conservator, Dorothy preferred John over Gene; that, in the investigator's view, the conservatorship should not be granted; and that, if there were to be a conservator, a neutral third party should be appointed.  *See* Doc. No. 35-4 at 1-4 ("Memorandum of Points and Authorities by Pronouncement").  Debtors acknowledge, however, that the California court in the conservatorship matter ultimately rejected this investigator's conclusions and allowed Gene to continue as conservator.  Debtors characterize this as another area where the court refused to listen to their arguments or evidence and consequently erred.

[19]   *In re the Matter of Dorothy Hyatt*, Case No. VP012079, Superior Court of California, Los Angeles County.

[20]   Commissioner Wada, in the February 2010 Decision, commented that the Ianita Property "was sold by court confirmation by the temporary trustee [of the Trust]."  This was one of two parcels of property owned by Dorothy, the other being located at 4946 Knoxville Ave.,

(continued...)

MEMORANDUM OF DECISION - 8

sale, the Ianita Property had been used to secure a line of credit under which John

received $185,000.[21]  Debtors contended these funds were a loan to them by

Dorothy.  Gene disagreed, arguing that these funds were wrongfully and

improperly taken by John.

On February 26, 2010, following contested litigation,[22] Commissioner

Wada of the California Superior Court issued the February 2010 Decision in Case

No. VP012044 (*In re The Hyatt Revocable Living Trust*).  Adv. Doc. No. 10-4.  In

it, the court found the following:

> Based on the trial testimony and evidence presented, John Walter Hyatt
> did wrongfully take funds of the Hyatt Revocable Trust.  He obtained
> $185,000 which was from the line of credit on the Ianita real property
> to which Dorothy Hyatt, the surviving settlor at that time, had not
> consented based on her letters which were admitted into evidence in
> this trial and testimony in court.  The letters establish that the taking of
> the monies and the personal property which belong to the trust were not

---

[20] (...continued)
Lakewood, California.

[21]  The Court has carefully reviewed the decisions of the California court and cannot
discern from them the date on which access to the line of credit occurred.  In the adversary
proceeding, the Trust asserts as an undisputed fact that it occurred while Debtor John Hyatt was
trustee of the Trust.  Adv. Doc. No. 10-1 at 4.  The Trust relies on Debtors' failure to respond to
requests for admission, *see* Fed. R. Bankr. P. 7036 (incorporating Fed. R. Civ. P. 36), for this
assertion.  *See* Adv. Doc. No. 10-1 at 3-4.

[22]  The February 2010 Decision expressly notes that Debtor John Hyatt appeared and
represented himself.  And the April 2010 Order that followed that decision states: "John Walter
Hyatt and Michelle Hyatt were physically present in pro per" at the trial that occurred on
December 10, 2009.  Adv. Doc. No. 10-5 at 1.  Debtors' submissions to this Bankruptcy Court
are consistent in acknowledging that these California hearings were an actively litigated matter in
which Debtors participated, and they note John attempted in such litigation to convince the
California court that Gene was not being truthful and that, if there was any fraud, it was on
Gene's part, not John's.

MEMORANDUM OF DECISION - 9

consented to as Dorothy Hyatt made demands for return of the property and had written that she was lied to. These actions would establish John Walter Hyatt took funds from the trust and therefore, is unfit to administer this trust on behalf of the trust beneficiaries and would also constitute good cause for John Walter Hyatt's removal as trustee. The removal of John Walter Hyatt as trustee of the trust is granted.[23]

        . . . .

    The testimony and evidence established that John Walter Hyatt and his wife, Shirley Michelle Hyatt received $185,000 from the home equity line of credit on the trust real property at 6560 Ianita in Lakewood, CA. That real property was a trust asset as evidenced by the original trust document and its attached Schedule A to the trust and has recently been sold by the temporary trustee . . . . The testimony and evidence further showed that Dorothy Hyatt did not give her consent to the taking of monies from the line of credit and was "betrayed and lied to" based on her handwritten letter of April 15, 2008 to John Walter Hyatt and Michelle Hyatt and had demanded return of the property and monies. Further written statements in the letter included "you made no mention of helping yourselves (stealing)" and "I can't believe what you did to me at my age and through year of loaning you thousands of dollars." The court finds that the taking of assets was not a loan. There were no documents to establish that the transactions were loans. Also, no payments by John Walter Hyatt have been made to the trust. John Walter Hyatt is ordered to return the sum of $185,000 to Gene Hyatt, trustee of the Hyatt Revocable Trust . . . .

    As to the personal items of Dorothy Hyatt addressed at trial, those items were assets of the trust based on the Assignment to the Hyatt Revocable Living Trust dated 11/16/90 of jewelry, furniture, furnishings and other personal property to the trust signed by George C. Hyatt and Dorothy Hyatt. As stated, from the testimony, it was established that those items were wrongfully taken by John Walter Hyatt. . . . Therefore, the wedding ring, Topaz ring, Amethyst ring, the

---

23  The court in this decision also appointed Gene Hyatt as successor trustee, noting that the other two siblings and trust beneficiaries, Christopher Hyatt and Susan Wuchner, consented to that appointment.

MEMORANDUM OF DECISION - 10

gold pocket watch, furniture and furnishings, crystal, china, and
computers, are ordered to be returned to Gene Hyatt, trustee . . .
forthwith. . . .

. . . .

As to the taking of the monies from this trust in the home equity
loan, the court finds the taking was in bad faith and wrongful based on
the testimony and evidence admitted where it was established by
writings of Dorothy Hyatt that she was betrayed and lied to and
questioned everything about her money, coins and personal items. . .
. . Further, evidence was introduced that showed John Walter Hyatt and
Michelle Hyatt attempted to scare, intimidate and influence Dorothy
Hyatt by stating to her that the government would take all of her assets
and sell her home and that Gene Hyatt had filed elder abuse charges
against John Walter Hyatt and Michelle Hyatt, which by testimony of
Gene Hyatt, was not filed.  The court awards double damages on the
taking of funds from the home equity line pursuant to [California]
Probate Code Section 859.[24]  Therefore, the court orders John Walter
Hyatt to return the sum of $185,000 to Gene Hyatt, trustee of the Hyatt
Revocable Trust and awards double damages pursuant to Probate Code
Section 859.  Dorothy Hyatt's wedding ring, topaz ring, amethyst ring,
the gold pocket watch, furniture and furnishings, crystal, china, and
computers which are assets of the Hyatt Revocable Trust are ordered
returned to Gene Hyatt, as trustee.

*Id.* at 5-7, 9.

---

24   At the time, California Probate Code § 859 provided:

If a court finds that a person has in bad faith wrongfully taken, concealed, or
disposed of property belonging to the estate of a decedent, conservatee, minor, or
trust, that person shall be liable for twice the value of the property recovered by an
action under this part.  The remedy provided in this section shall be in addition to
any other remedies available in law to a trustee, guardian or conservator, or personal
representative or other successor in interest of a decedent.

Earlier this year, the California legislature decided to amend this section to include the use of undue
influence in bad faith or through the commission of elder or dependent adult financial abuse as
additional grounds for imposing "double damages."  *See* 2011 Cal. Stat. ch. 55, sec. 1.

MEMORANDUM OF DECISION - 11

Each of these rulings is later confirmed in the form the April 2010 Order

entered by that court.  Adv. Doc. No. 10-5.  The April 2010 Order also calculated

the impact of the "double damages" ruling, and awarded damages as follows:

> The court finds that pursuant to Probate Code § 859, that John
> Walter Hyatt acted in bad faith in the taking of the property of the trust
> including the $185,000.  Therefore the Court orders John Walter Hyatt,
> in addition to the return of the $185,000.00, to pay double damages in
> the amount of $370,000.00 forthwith.  John Walter Hyatt is ordered to
> pay the successor trustee, Gene Hyatt, on behalf of the Hyatt Revocable
> Living Trust a total of $555,000.00 ($185,000.00 plus ($185,000.00 X
> 2)) forthwith.

*Id.* at 3.

Finally, in the February 2010 Decision, the court made the following

observation:

> On December 9, 2009, the eve of the trial, and December 10, 2009,
> the day of the trial, John Walter Hyatt filed pleadings seeking to name
> Judge Brian Gasida, Judge Michael Cowell, and Presiding Judge
> Charles W. McCoy, Jr., as well as the judicial officer presiding in these
> proceedings [*i.e.*, Commissioner Wada] as third party defendants in a
> action described in both as "IN ADMIRALTY."  As best as can be
> determined by a review of the confusing pleadings, Mr. Hyatt contends
> that these various judicial officers have ruled incorrectly or improperly
> in some way in this action, or that there is no basis for rulings they
> made or allegedly made.  The pleadings filed December 9, 2009 and
> December 10, 2009 are a legal nullity, and are stricken.  Remedies for
> allegedly incorrect rulings in a case include motions for
> reconsideration, petitions and appeals to a reviewing court.

Adv. Doc. No. 10-4 at 12.  Despite this last express comment, the April 2010

Order was not appealed.  As to why not, Debtors state in their objection to the

Stay Motion:

MEMORANDUM OF DECISION - 12

> Every court we have been in has denied us the defense of FRAUD and Fraud upon the Court, in the California Court we did not appeal because we believed the rendering judge would NOT allow it as they had DENIED each and every motion we put forth with verified and un-refuted evidence of Fraud, thus we believed Justice was not to be in Calif.

Doc. No. 34 at 4-5.

### C.    Idaho State Court litigation

In July 2010, the Trust caused a certified copy of the final and unappealed California April 2010 Order to be filed as a foreign judgment in the District Court of the First Judicial District, State of Idaho, Kootenai County,[25] and the same was thereafter recorded in the Kootenai County real property records on August 10, 2010.  Stay Motion, Doc. No. 24-2.  This was the starting point for continuous and extensive litigation between the Trust, Debtors and others before the Idaho state court.

Rulings made by the Idaho district court are lengthy and detailed.  Its March 1, 2011, Memorandum of Decision and Order granting summary judgment to the Trust, and its April 25, 2011, Memorandum of Decision and Order are attached to the Stay Motion.  *See* Doc. Nos. 24-3, 24-6.[26]  It would unduly lengthen this Decision to repeat the findings and conclusions of the state court in

---

[25]  Case No. CV 2010-6541.

[26]  The March 1, 2011, summary judgment ruling is reflected in an Amended Partial Judgment which was certified by the state court under Idaho R. Civ. P. 54(b).  *See* Doc. No. 24-4.

MEMORANDUM OF DECISION - 13

detail.  However, there are a number of aspects to those rulings that must be noted.

Case No. CV 2010-6541 was commenced, as noted, in July 2010.  It was assigned to the Honorable John Mitchell.  A writ of execution was issued on the domesticated California judgment in August 2010.  This resulted in an appearance by Debtors, who counterclaimed for injunctive and other relief in order to stop the collection of the judgment through execution.  In September 2010, the court ruled that Debtors had failed to establish the basis required by Idaho Code § 10-2304 for a stay of execution on the Trust's judgment, and therefore denied the injunctive relief.

A second case, Case No. CV 2010-8180, was commenced by the Trust in September 2010.  It was initially assigned to the Honorable Benjamin Simpson, though it was later consolidated with Case No. CV 2010-6541 and reassigned to Judge Mitchell.

This second action sought rulings related to the allegedly fraudulent transfer of Debtors' Kootenai County real property to the "Church Road Trust." The underlying assertion was that prior to 2006 Debtors owned a single parcel of real property; that Debtors deeded the same to John Hyatt as trustee of the Church Road Trust; that, as trustee, John caused the Church Road Trust to divide the parcel into four separate parcels; and that the Church Road Trust then conveyed all

MEMORANDUM OF DECISION - 14

four parcels to Debtors' daughter, Rebekah Hyatt.[27]

The Idaho district court, on March 1, 2011, entered a 15-page
Memorandum of Decision and Order.  Doc. No. 24-3.[28]  This followed (and
quoted extensively from) a prior decision of that court rendered on January 14,
2011.[29]  The matter addressed in the March 1 decision was the Trust's motion for
summary judgment seeking a determination that the conveyance of the Property to
the Church Road Trust, and the subsequent conveyance from that entity to
Rebekah Hyatt, were fraudulent under Idaho state law.  The court found:

a.      Debtors failed to meet their burden on summary judgment to
        establish a triable issue on the question of whether the transfers of
        the property were made with the intent to hinder, delay or defraud
        the Trust under Idaho Code § 55-913(1);

b.      Debtors failed to meet their burden to establish a triable issue on the

---

[27]  The Trust also at one point sought a ruling from the California court to the effect that
Debtors' residence at 11341 North Church Road, Rathdrum, Idaho, was 100% property of the
Trust or traceable to the funds taken from the Trust.  The California court declined to so rule,
questioning its jurisdiction to make orders as to ownership of out-of-state real property.  It also
noted that the probate petition indicated the real property was at the time titled in the name of
Church Road Trust, an entity that had not been served in the California action.  *See* Adv. Doc.
No. 10-4 at 7; *see also* Adv. Doc. No. 10-5 at 2, ¶ 5.

[28]  The Idaho state court's March 1 decision and order is reproduced twice in the Trust's
submissions.  *See* Doc. No. 24-3.

[29]  The earlier decision was on the Trust's motion for judicial notice; motion for
attorneys' fees, costs and sanctions; and motion to strike Debtors' pleadings and filings, and/or to
dismiss.  All those motions were granted, though the sanctions were awarded against Debtor John
Hyatt alone.  Incorporated or included in such rulings was a denial of Debtors' attempt to enjoin
or stay the Trust's enforcement of its judgment.

MEMORANDUM OF DECISION - 15

question of whether the Debtors' marital community was jointly and

severally liable for the California judgment; and

c.   The Trust established claims for conversion regarding the personal

property listed in the California judgment (*i.e.*, wedding ring, topaz

ring, amethyst ring, gold pocket watch, furniture, furnishings, etc.)

and established a claim for unjust enrichment for Debtors' remaining

in Property purchased with the $185,000 taken from the Trust, and

that Debtors failed to establish a triable issue on the question of

liability for conversion or unjust enrichment.

Summary judgment was therefore granted to the Trust.  The court also addressed

and rejected several collateral contentions made by Debtors, including questions

of jurisdiction and adequacy of notice.  It stated:

> At oral argument, both John Hyatt and Shirley Hyatt complained of
> the fraud that was allegedly perpetrated upon the California court by
> plaintiff.  The problem is none of the defendants have come up with
> any cogent legal argument as to why this court would be the
> appropriate forum to retry those issues decided by a California judge.

*Id.* at 15.

The Court entered an Amended Partial Judgment and I.R.C.P. 54(b)

Certificate on March 14, 2011.  Doc. No. 24-4.  It specifically held therein that the

Trust's motion for summary judgment was granted in its entirety; that Debtors

John and Shirley Hyatt are a marital community and such community is jointly

and severally liable for satisfaction of the California judgment; that a December

MEMORANDUM OF DECISION - 16

2006 transfer by Debtors to the Church Road Trust of the real property[30] was

fraudulent under Idaho law and avoided; that a September 2009 transfer of the

property[31] from Church Road Trust to Rebekah Hyatt was fraudulent under Idaho

law and avoided; and that Debtors John Hyatt and Shirley Hyatt, a marital

community, were the record holders of title to the Property at 11341 Church Road,

Rathdrum, Idaho.

The court was required to issue yet another decision on April 25, 2011.  *See*

Doc. No. 24-6.  This decision addressed Debtors' motions for a temporary order

canceling sheriff's sale; for relief from judgment; to dismiss for lack of real party

in interest; for contempt; to dismiss for lack of jurisdiction; and to vacate summary

judgment.  This decision also addressed the Trust's motion to contest the

defendants' various claims of exemption from sheriff's sale.

The court again recited the procedural history of the two consolidated

cases: No. CV 2010-6541, in which the Trust sought to enforce its foreign

judgment and in which the court rejected Debtors' attempts to stay the

proceedings or obtain other injunctive relief; and No. CV 2010-8180, in which the

Trust sought to avoid as fraudulent Debtors' transfer of their real property to the

---

[30]  At that time, Evelyn's Acres, Lot 4, Block 1, in Kootenai County, as further described
in the decision, order and judgment.

[31]  At time, Lots 1, 2, 3 and 4, Block 1, Church Road Estates, in Kootenai County, as
further described in the decision, order and judgment, and commonly referred to as 11341 Church
Road, Rathdrum, Idaho (*i.e.*, the Property).

MEMORANDUM OF DECISION - 17

Church Road Trust as well as that entity's later transfer to Rebekah Hyatt, which

relief the court had just granted.  The court then addressed the new matters – what

the court characterized as John Hyatt's "litany of motions."  *See id.* at 6-7

(identifying and listing motions).[32]

The court noted that, again, "John Hyatt spent most of the time at oral

argument . . . arguing at length about the fraud involved in the California

judgment."  *Id.* at 10.  The court also noted John's contentions that the court had

taken up matters at hearings in an improper order, prejudicing Debtors, and that he

had filed a pleading after the April 19, 2011, hearing in this regard.  *Id.* (referring

to "By Necessity a Mandatory Judicial Notice of Judicial Errors, Judicial Bias and

Judicial Impartiality Against John Walter Hyatt; Presented by Pronouncement of

John Walter Hyatt.").

As to this and other papers, the court held that they were a "sham," and

merely reiterations of various papers and arguments already rejected as legally

insufficient.  The court further observed:

> Gene Hyatt [in his opposition to the several motions] pinpoints the very
> reason John Hyatt's requests for relief from this Court must fail: the
> underlying California Judgment was not appealed and is entitled to full
> faith and credit by this Court; the relief John Hyatt now seeks is barred
> by *res judicata*.

*Id.* at 12-13.  After addressing specific problems, the court concluded that "John

---

[32]  The court noted that John, Shirley and Rebekah Hyatt all attended the hearing on
April 19, 2011 (misidentified as "2010" in the decision).  It mentioned that John argued, but that
Shirley and Rebekah "presented no argument as they presented no motions."  *Id.* at 7.

MEMORANDUM OF DECISION - 18

Hyatt's <u>only</u> remedy is to contest the California Judgment <u>in the courts of</u> <u>California</u>.  All the pleadings John Hyatt has submitted before this Court in this case are a sham in light of that unchangeable fact."  *Id.* at 15.

John, Shirley and Rebekah Hyatt had each asserted claims of exemption in response to an amended writ of execution on the Amended Partial Judgment.  Not only did the court perceive procedural issues with the timing and delivery of the exemption claims under Idaho law, but it also identified substantive defects with those claims.  And, after considering the purposes to be served by the exemption laws, including the protection of "honest debtors" by providing them the means for a fresh start, the court found:

> The matter before the Court does not involve an "honest debtor".  Rather, John Hyatt is seeking precisely what "in common honesty does not belong to [them]."  The "may" language in I.C. § 11-607 indicates that whether the facts before the Court constitute a loan or claim for obtaining money by false pretenses remains an issue committed to the Court's discretion.  In light of the California Judgment, which this Court gives full faith and credit, Gene Hyatt's argument (that this matter involves "claims for obtaining money or property by false pretenses") is well-taken.  No exemption of any kind lies in favor of John Hyatt.

*Id.* at 19.  This ruling was later restated by the court,  holding that "the claims of exemption made by John Hyatt, Shirley Hyatt and Rebekah Hyatt are each, without merit."  *Id.* at 22.[33]  The court noted that the only matter remaining for

---

[33]  The court further held that, in regard to such exemptions, "the Kootenai County Sheriff is to ignore each of them."  *Id.* at 23.

MEMORANDUM OF DECISION - 19

hearing would be the Trust's motion for attorneys' fees, costs and sanctions. *Id.* at 24.

That latter matter was heard on May 31, 2011. Debtors filed no responses, and did not appear at the hearing. The court entered a memorandum of decision and order on May 31, 2011. Doc. No. 24-7. In it, the court stated, "Gene Hyatt is the prevailing party, having been granted all relief sought and in light of each of John Hyatt's numerous motions having been denied at summary judgment and on reconsideration." *Id.* at 5.

The court considered the Trust's request for fees under Idaho R. Civ. P. 11(a)(1). That rule provides that where motions and other papers are not well grounded in fact, warranted by existing law or a good faith argument for extension or modification of existing law, or are interposed for an improper purpose, such as to harass or cause undue delay or needlessly increasing the cost of litigation, sanctions may be awarded. The court reaffirmed its prior rulings, finding that John Hyatt's pleadings were "a sham, were interposed for improper purposes and, in fact, amounted to harassment." *Id.* at 7. The amount of the fees to be awarded were to be determined.

As noted, Debtors filed their chapter 7 petition just days later, on June 8.

### D.    Idaho Federal Court Litigation

In evaluating all maters before it, this Court became aware of yet another lawsuit related to Debtors and the Trust, this one before the United States District

MEMORANDUM OF DECISION - 20

Court for the District of Idaho, *John Walter Hyatt v. Baron & Behrndt, LLP, et al.*, Case No. 2:09-cv-372-EJL-LMB (the "Idaho Federal Case"). In it, John sued Gene and other family members, their lawyers, the California court, California judges Cowell, Wada, McCoy and Gasida, and others. His "Complaint for Damages[,] Judgment of Violations of Constitutional Rights, Conspiracy, Fraud, Perjury, Wrongful Death and Obstruction of Justice[,] Injunctive Relief" was filed August 7, 2009, and amended on March 26, 2010. Idaho Federal Case, Doc. Nos. 1, 11. Two numbered counts (intentional infliction of emotional distress and conspiracy to obstruct justice) were asserted against Gene Hyatt and Brian Baron. Another count asserted against all named defendants alleged a violation of Constitutional rights and, it appears, a couple dozen additional common law or statutory claims. The complaint's prayer sought a judgment from the Idaho federal court dismissing all claims against John Hyatt in the California cases, and vacation of all orders entered against him therein; a finding that John Hyatt is the successor trustee of the Trust; a finding that Gene and the other siblings are "disinherited" from George and Dorothy's estates and the Trust; a judgment against certain of the defendants for John Hyatt's fees, costs and expenses; and similar requests. *Id.*

On August 5, 2010, U.S. Magistrate Judge Larry M. Boyle entered a Report and Recommendation regarding motions to dismiss Hyatt's amended complaint in this action. Judge Boyle noted that the amended complaint raised 58 claims

MEMORANDUM OF DECISION - 21

against 39 defendants who were "a diverse group of individuals and entities who all, in widely varying degrees, had some relation to the handling of Dorothy's estate." Idaho Federal Case, Doc. No. 49, at 3. He summarized the underlying situation as follows:

> By way of background, following lengthy California state court litigation, including cases to establish conservatorship prior to Dorothy's death and a probate trial after her death, on February 26, 2010, Commissioner Robert S. Wada issued a decision finding that [John] Hyatt had stolen from and lied to his mother. In the same decision, Commissioner Wada removed Hyatt as trustee because the amendment appointing him as such was determined to be invalid. Instead, Commissioner Wada appointed Hyatt's brother, Gene Hyatt, as trustee. Additionally, Commissioner Wada ruled that Hyatt must return a significant amount of trust property, including $185,000 cash, jewelry, furniture, crystal, china and computers. Finally, Commissioner Wada awarded to the trust double damages on the taking of funds claim, finding that Hyatt and his wife, Michelle, "attempted to scare, intimidate and influence Dorothy Hyatt."

*Id.* at 2-3 (citation omitted).

Judge Boyle observed that "[t]he heart of Hyatt's Amended Complaint [in the Idaho Federal Case] is that the California state court incorrectly decided conservatorship and probate of his deceased mother's estate." *Id.* at 4. However, in evaluating federal court jurisdiction over the cause of action, he held:

> A federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." "This rule applies even though . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights."

*Id.* at 5 (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462,

MEMORANDUM OF DECISION - 22

486 (1983)).  Judge Boyle recognized that the "*Rooker-Feldman* doctrine" applied

to bar a federal court from exercising subject matter jurisdiction over a proceeding

in which a party losing in state court seeks what in substance would be appellate

review; that this is true even where such a party is claiming that the state court

judgment violated his or her federal rights; that it bars not only consideration of

issues heard in the state court but any issue that is "inextricably intertwined" with

an issue decided by the state court; and that the doctrine applies notwithstanding

the plaintiff's assertion that the state court lacked jurisdiction to render a

judgment.  *Id.* at 5-6.  Judge Boyle recommended to the District Court that the suit

be dismissed with prejudice.  The District Court adopted the Report and

Recommendation, and dismissed the action.  Idaho Federal Case, Doc. No. 50.

**DISCUSSION AND DISPOSITION**

> **A.    Stay Motion**

>> **1.    The validity and enforceability of the Judgment**

The Stay Motion and other matters before the Court all have a common

denominator – the enforceability of the California court's April 2010 Order which

has now been domesticated as an Idaho judgment.

The Trust argues that the California court's order, being properly brought

to Idaho as a foreign judgment and domesticated, is entitled to enforcement under

Idaho law.  This includes, but is not limited to, the recording of that Judgment in

the real property records of Kootenai County, creating a judgment lien on the

MEMORANDUM OF DECISION - 23

Property under Idaho Code § 10-1110.  The Stay Relief Motion seeks the ability to continue that enforcement process under the Idaho state court's orders.

Debtors' contention, however, is that the California order was procured through Gene Hyatt's fraud, thus rendering that order "void" and unenforceable. *See*, *e.g.*, Doc. No. 34 at 7, ¶ 23 ("Objection to Motion for Relief from Stay . . ." of Debtors, arguing: "It is well settled that erroneous final judgments serve as a bar to further litigation on the action, whereas in general ***void judgments*** may be collaterally attacked.  A void judgment or order may properly be attacked at any time, directly or collaterally.").

### a.     The California order

Debtors' defense in connection with the Stay Motion, and strategy in this entire chapter 7 case and the related adversary proceeding, depends on the vacation or negation of the California order.  In essence, Debtors contend that because that order is tainted by fraud, the Trust does not have an enforceable claim against Debtors, and therefore holds no cognizable judicial lien interest in the Property, since all such lien rights flow from the presumption that the underlying California order is valid.

Initially, the Court notes the scope of stay relief proceedings.  Such proceedings are summary in nature and limited to determining whether there are "sufficient countervailing equities to release an individual creditor from the collective stay."  *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R.

MEMORANDUM OF DECISION - 24

897, 914 (9th Cir. BAP 2011). Thus, a relief from stay proceeding is not an appropriate vehicle for finally and definitively determining a creditor's claim or security. *Id.*; *see also Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985) ("Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing.") (citations omitted).

Given the limited nature of stay relief, the expedited hearing process under § 362(e), and because final adjudication of the parties' rights and liabilities often has yet to occur, courts have held that a party seeking stay relief need only establish that it has a colorable claim to enforce against property of the estate. *Veal*, 450 B.R. at 914-15. Once the moving party has established a prima facie case that relief from the stay is proper, the burden shifts to the debtor to show that the requested relief is not warranted. *See* 362(g); *United States v. Gould (In re Gould)*, 401 B.R. 415, 426 & n.15 (9th Cir. BAP 2009).

The Trust has established a colorable claim against Debtors and their Property. Absent any controlling federal law, interests in property are determined by state law. *Gaughan v. The Edward Dittlof Revocable Trust (In re Costas)*, 555 F.3d 790, 793 (9th Cir. 2009) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). Idaho law operated to create a judicial lien on the Property in favor of the Trust upon the domestication and recordation of the final, unappealed California order. *See* Idaho Code § 10-1110.

MEMORANDUM OF DECISION - 25

To the extent Debtors contend the underlying California order is susceptible to collateral attack – an argument that failed to convince either the Idaho state court or the Idaho U.S. District Court – this Court, like those courts, perceives significant legal hurdles to Debtors' approach.[34]

Successfully advancing this strategy requires more than just Debtors' accusations of Gene's fraud, and more than their assertion that the California courts erred, ignored evidence, or somehow violated Debtors' rights. The Full Faith and Credit Act requires federal courts to give state court judgments the same preclusive effect those judgments would enjoy under the law of the state in which the judgment was rendered. 28 U.S.C. § 1738;[35] *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001); *see also* Restatement (Second) of Judgments § 86 (1982). The Supreme Court has stated: "We have made it clear that it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (quoting *Walker v.*

---

[34] In rejecting the collateral attack, both the Idaho state court and the U.S. District Court expressly – and correctly – indicated that the alleged errors in the California courts are matters for appeal or similar relief in the California court system. Indeed, even the California court noted that the proper remedy was appeal.

[35] The Full Faith and Credit Act, 28 U.S.C. § 1738, provides in pertinent part that state court decisions "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

*Birmingham*, 388 U.S. 307, 314 (1967)).  Accordingly, the circumstances in which collateral attacks are proper are extraordinarily limited.  Debtors have not shown that they fall within those limited circumstances.

Additionally, because here Debtors' would be seeking a *federal* court's review and vacation of an allegedly erroneous *state* court decision, similar to their suit in the U.S. District Court, the *Rooker-Feldman* doctrine is implicated.  As noted by Judge Boyle, this doctrine, derived from the cases of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), is "a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-59 (9th Cir. 2008).  The Ninth Circuit has recognized that "[t]he clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). *Rooker-Feldman* may also apply where there is not a direct contest of the merits of a state court decision, because the doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment." *Reusser*, 525 F.3d at 859 (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)).  Debtors have not explained how they

MEMORANDUM OF DECISION - 27

could successfully attack the California orders either in their main bankruptcy case or through a related adversary proceeding given the prohibitions imposed by *Rooker-Feldman*.

Though for purposes of stay relief the Court need not decide with finality the impact of these authorities on Debtors' attempts to attack the California orders, it notes that the Full Faith and Credit Act and the *Rooker-Feldman* doctrine would appear to present insurmountable obstacles to Debtors achieving a vacation or other negation of the underlying, challenged rulings.

Under these authorities, and given Debtors' inability to adequately explain and justify why the California court's orders and rulings should not be given full faith and credit, this Court is constrained to respect them.

### b.    The Idaho rulings

A similar and important secondary analysis attends this Court's proper role in considering the rulings of the Idaho state court. Assume, for the sake of argument, that there was error in or regarding the California court's April 2010 Order, that such error(s) rendered the California judgment "void" and susceptible (in Debtors' view) to collateral attack. That very assault on the California ruling was leveled by Debtors in the Idaho state court litigation between the Trust and Debtors.

The Idaho state court specifically upheld the California order, and ruled that these attacks were not well taken, and that Debtors' remedy for alleged fraud or

MEMORANDUM OF DECISION - 28

other error in California was a review on appeal or other action in the California courts. The Idaho court ruled that there was no basis to enjoin execution on the domesticated judgment. It also specifically ruled that the exemptions claimed by Debtors and their daughter were invalid and were to be ignored by the Sheriff. It ruled that summary judgment would be granted to the Trust on the issue of Debtors' ownership of the Property, and found that the obligation to the Trust was owed by both Debtors and their marital community. Its ruling as to the ownership of the Property also established that the prior transfers into and out of the Church Road Trust were fraudulent under Idaho law. Each of these rulings is similarly entitled to full faith and credit by this Court, and collateral attack thereon is improper and cannot be countenanced.[36]

As a result, and on the facts and record as above set out, the Court treats the Trust's judicial lien as fully valid and effective as against the Property, which Property has been judicially determined to be an asset of Debtors. The Court turns to the elements of stay relief under § 362(d).

### 2.      Relief under Section 362(d)(2)

The Code provides that "[o]n request of a party in interest and after notice

---

[36] Generally principles of preclusion attend "final" decisions of a state court. Certainly part of the litigation is incomplete. However, an amended partial judgment and Rule 54(b) certificate was issued by the Idaho state court in March 2011. Doc. No. 24-4. There is nothing to establish the existence of an appeal as to it. Further, for purposes of stay relief, the issue goes to whether the moving creditor has a colorable claim. The Trust has established that prerequisite, and Debtors have failed to show – given the state court's rulings to date – that those decisions of the Idaho court should not be afforded respect by this Court.

MEMORANDUM OF DECISION - 29

and a hearing, the court shall grant relief from the stay provided under [§ 362(a)] .
. . (2) with respect to a stay of an act against property under [§ 362(a)], if – (A) the
debtor does not have an equity in such property; and (B) such property is not
necessary to an effective reorganization."  11 U.S.C. § 362(d)(2).

The Trust has carried its burden of proving a lack of equity in the
Property.[37]  Equity, for purposes of § 362(d), exists if there is value in property in
excess of all the claims secured by that property.  *In re Jordan*, 392 B.R. 428, 447
(Bankr. D. Idaho 2008) (citing *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396,
1400 n.2 (9th Cir. 1984)).  The Property had, pursuant to Debtors' schedules, a
total value of $303,000.[38]  The Trust is entitled to accept that figure for purposes
of this stay relief motion.[39]  No other evidence of value was suggested by Debtors.
The Trust's judgment is in excess of $500,000, leaving no equity in the Property
for Debtors' bankruptcy estate.

Nor is the Property necessary for an effective reorganization.  In this
chapter 7 case, there is no argument that the Property is needed "for an effective

---

[37]  The party requesting stay relief has the burden of proof on the issue of equity, and the
party opposing such relief has the burden on all other issues.  *See* § 362(g).

[38]  *See* Doc. No. 26 at 1 (amended schedules).

[39]  *In re Hobart*, 452 B.R. 789, 792 n.4 (Bankr. D. Idaho 2011) (citing Fed. R. Evid.
801(d)(2) and other authorities); *In re Roots Rents, Inc.*, 420 B.R. 28, 40 (Bankr. D. Idaho 2009)
(discussing *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001)).

MEMORANDUM OF DECISION - 30

reorganization" as there is, per force, no reorganization in a liquidation case.[40] Given that there is a clear lack of equity in the Property, both prongs of § 362(d)(2) are met, and the Trust has established entitlement to stay relief.

The Stay Motion will be granted and the stay terminated as to Debtors and as to the Property, allowing the Trust to pursue to completion the judicial lien enforcement process in Idaho state court under Idaho law.[41]

### C.   Dismissal Motion

The Trustee's Dismissal Motion is predicated on Debtors' failure to comply with § 521(e)(2)(A)(i), which requires them to provide the Bankruptcy Trustee, not later than seven days before the date first set for the § 341(a) meeting, a copy of the federal income tax return (or transcript) for the most recent tax year ending immediately before the commencement of the case. *See also* Fed. R. Bankr. P. 4002(b)(3) (implementing the statutory requirement). Under § 521(e)(2)(B), if the

---

[40]   *See*, *e.g.*, *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983) (holding § 362(d)(2) is applicable in reorganization cases and "inapplicable" in chapter 7 liquidation); *In re Houston*, 2009 WL 2591375, at *1 n.2 (Bankr. D. Mont. Aug. 20, 2009); *In re Hersperger*, 2008 WL 2201455, at *2 (W.D. Pa. Mar. 14, 2008) ("Because a Chapter 7 proceeding does not involve a reorganization, it is generally presumed that the second condition under 11 U.S.C. § 362(d)(2)(B) is met in a chapter 7 proceeding."); *In re Manuel*, 2007 WL 2254695, at *1 (Bankr. E.D. Cal. Aug. 2, 2007).

[41]   In this regard, the Court will also modify the stay so as to allow the Idaho state court to conclude the determination of the amount of the attorneys' fees awarded the Trust.  This will establish a final claim amount for purposes of the execution process on the Property.  However, there is no relief from stay granted the Trust to pursue collection of the amounts owed it other than through execution on the Property.  Collection of *un*secured debt is stayed.  And whether there will at some point be an ability to pursue collection of unsecured debt depends on the outcome of the dischargeability litigation.

MEMORANDUM OF DECISION - 31

debtor fails to comply with § 521(e)(2)(A)(i), "the court *shall* dismiss the case *unless* the debtor demonstrates that the failure to so comply is due to circumstances beyond the control of the debtor."  (Emphasis added).

The Bankruptcy Trustee contends that he requested the 2009 and 2010 state and federal income tax returns and did not receive them.  Debtors here argue that, based on their lay reading of the Internal Revenue Code and/or the Internal Revenue Service Manual, they were required to, and did, file "IRS Form 709" gift tax returns, and provided copies of the same to the Bankruptcy Trustee.[42]  *See* Doc. No. 47 (Response to Dismissal Motion).  Exhibits 200 through 203, admitted on November 1, are those "returns."  While these are clearly "gift tax" returns, not income tax returns, Debtors maintain that they are technically or precisely what the IRS requires.  They assert this position notwithstanding their testimony that they received funds in those tax years for services they performed as "part-time independent contractors" selling products or services at trade shows, and notwithstanding their entries on the federal gift tax returns themselves indicating that the amounts received were in "compensation for labor."[43]

John Hyatt did testify that, if Debtors were in error in their interpretation of

---

[42]  John Hyatt testified that Debtors also consulted with an Enrolled Agent three or four months prior to the hearing, who validated their reading of the authorities.

[43]  Debtors admit no state tax returns were ever prepared, relying on "FAQ" information on the Idaho State Tax Commission website that, in Debtors' view, eliminates a state filing requirement when only "gift tax" returns are filed federally.

MEMORANDUM OF DECISION - 32

the tax filing requirements, they would prepare and file income tax returns for

those years.  In fact, he stated that shortly before the November 1 hearing they had

begun the process of preparing such returns.  The rejected rebuttal exhibits that

Debtors attempted to introduce were, purportedly, drafts of income tax returns

they were working on but had not completed.

The Court considers the arguments in light of the language of the Code.

Here, within the time frames required, Debtors did provide to the Bankruptcy

Trustee what they deemed to be the required, filed tax returns.  *See* Doc. No. 47 at

27 (e-mail transmittal to Bankruptcy Trustee dated July 1, 2011 with purported

attachments).  The Bankruptcy Trustee has not denied receiving these materials.

Nor is there an argument made that they were not received more than seven days

in advance of the § 341(a) meeting scheduled for July 13, 2011.[44]

The argument, therefore, is not really one that Debtors refused to provide

their documents to the Bankruptcy Trustee in a timely way.  Rather, it is more an

argument that what Debtors filed with the IRS, and provided the Bankruptcy

Trustee under § 521(e)(1)(A), were inadequate to constitute "the Federal income

tax returns required under applicable law" for purposes of that section.

Neither the Bankruptcy Trustee nor Debtors provided any decisional or

---

[44]   The Bankruptcy Trustee's minutes of the July 13 meeting are filed as Doc. No. 28.
That meeting was continued to August 11, and the minutes of the continued meeting are filed as
Doc. No. 36.  Neither set of minutes specifically addressed the tax return issue, though a
preprinted item "Tax returns, transcripts or statement" bears a checkmark on each set of minutes.

MEMORANDUM OF DECISION - 33

other authority related to the provisions of § 521(e)(2)(A) and (B).  The Court concludes the BankruptcyTrustee has not established that satisfaction of this Code provision requires a debtor to do more than give the chapter 7 or 13 trustee a copy of whatever was, in fact, filed for the described tax year.  It may well be that what was filed is an improper, incomplete, or otherwise noncompliant document under tax law.  But the Bankruptcy Trustee has not persuaded the Court that § 521(e)(2)(A)(i) implicates a required judicial review of the adequacy under applicable nonbankruptcy law of a debtor's filed return.

The Dismissal Motion will be denied for that reason.[45]

## CONCLUSION

Based upon the reasons set forth above, the Court determines that the Trust's Stay Motion is well taken.  It will be granted, and the automatic stay will be terminated in favor of the Trust as against Debtors and as against the Property, and the process under applicable Idaho law to realize on the Property in satisfaction of the Trust's judgment may proceed.  The Bankruptcy Trustee's Dismissal Motion will be denied.

The Court will enter orders accordingly.

---

[45]  For clarity, the Court is not suggesting that Debtors' reading of the IRS Manual is defensible or that the "gift tax" returns are adequate as a matter of applicable law, it is simply that such a question need not be reached in order to address the requirement of § 521(e)(2)(A)(i) that a copy of whatever was filed be timely delivered to an individual debtor's chapter 7 or chapter 13 trustee.

DATED: December 9, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 35